IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WALLACE L. OVERMAN,                          6:14-CV-01659-BR

       Plaintiff,                       OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

       Defendant.


KATHRYN TASSINARI
ROBERT BARON
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(541) 686-1969

       Attorneys for Plaintiff

BILLY J. WILLIAMS
Acting United States Attorney
JANICE E. HERBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011


1 - OPINION AND ORDER

**DAPHNE BANAY**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
(206) 615-2113

       Attorneys for Defendant

**BROWN, Judge.**

     Plaintiff Wallace L. Overman seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for disability insurance benefits under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits to Plaintiff.

## ADMINISTRATIVE HISTORY

     Plaintiff protectively filed his applications on April 4, 2011, and alleged a disability onset date of June 1, 2006. Tr. 177-86. [1] The applications were denied initially and on

---

    [1] Citations to the official transcript of record filed by the Commissioner on April 2, 2015, are referred to as "Tr."

2 - OPINION AND ORDER

reconsideration.  An Administrative Law Judge (ALJ) held a
hearing on May 22, 2013.  Tr. 41-84.  At the hearing Plaintiff
was represented by an attorney.  Plaintiff and a vocational
expert (VE) testified.

The ALJ issued a decision on August 2, 2011, in which she
found Plaintiff is not disabled.  Tr. 19-29.  That decision
became the final decision of the Commissioner on August 25, 2014,
when the Appeals Council denied Plaintiff's request for review.
Tr. 1-3.  *See Sims v. Apfel,* 430 U.S. 103, 106-07 (2000).

On October 20, 2014, Plaintiff filed a Complaint in this
Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born in September 1961 and was 52 years old at
the time of the hearing.  Tr. 45.  He took special education
classes and completed the tenth grade.  Tr. 45-6.  Plaintiff has
past relevant work experience as a fast-food cook, maintenance
worker, and construction laborer.  Tr. 75.

Plaintiff alleges disability due to "gout, hearing loss,
left shoulder problem, slow learner."  Tr. 214.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th

Cir. 2012).   To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.   *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.   42 U.S.C. § 405(g).   *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).   Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."   *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).   It is more than a mere scintilla [of evidence] but less than a preponderance.   *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.   *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.

2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner

determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine

whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity (SGA) since his June 1, 2006, alleged onset date. Tr. 21. The ALJ found Plaintiff met the insured status requirements through December 31, 2009.

At Step Two the ALJ found Plaintiff has severe impairments including gout v. pseudo gout, major depressive disorder, cannabis abuse, learning disorder NOS, intermittent explosive disorder, generalized anxiety disorder, GERD, bilateral hearing loss, and left-shoulder tendinosis. Tr. 21-22.

At Step Three the ALJ found Plaintiff's impairments do not

7 - OPINION AND ORDER

meet or equal any listed impairment.  Tr. 22.  The ALJ found Plaintiff has the RFC for less than a full range of medium work except he can sit, stand, and walk for six hours each in an eight-hour workday; can occasionally reach overhead bilaterally and frequently reach bilaterally in all other directions; can occasionally climb ladders, ropes, and scaffolds; and can understand, remember, and carry out simple instructions that can be learned in 30 days or less.  The claimant can have occasional contact with supervisors, coworkers, and the public.  He cannot, however, work in a job where excellent hearing is required.  He can perform frequent, but not repetitive, bilateral handling and fingering.  He must be able to briefly change positions every 30 minutes to one hour.  Plaintiff should be given instructions verbally and by demonstration.  He cannot perform production-line work.  Tr. 23-24.

At Step Four the ALJ found Plaintiff was unable to perform any past relevant work.  Tr. 28.

At Step Five the ALJ found Plaintiff is able to perform the occupations of auto detailer, laundry worker, and janitor. Tr. 28-29.


## DISCUSSION

Plaintiff contends the Commissioner erred by (1) improperly finding Plaintiff was not fully credible, (2) improperly weighing

8 - OPINION AND ORDER

medical evidence, and (3) failing to prove that Plaintiff retains the ability to perform "other work" in the national economy.

**I.   The ALJ erred when she found Plaintiff's testimony was less than fully credible.**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir. 2008). The ALJ's findings, however, must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). *See also Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001). Unless there is affirmative evidence that shows the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. *Id.* The evidence on which the ALJ relies must be substantial. *Id.* at 724. *See also Holohan,* 246 F.3d at 1208. General findings (*e.g.*, "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick,* 157 F.3d at 722. *See also Holohan,* 246 F.3d at 1208.

When deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis:

the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an under-lying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) [he] must produce objective medical evidence of an impairment or impairments; and (2) [he] must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F.3d at 1282. *See also Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008).

If the claimant satisfies the above test and there is not affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

**A. Plaintiff's Testimony**

In his Adult Function Report dated April 28, 2011, Plaintiff

stated he lived with his wife and stepson.  Tr. 228.  He has
"gout so bad that it flares up at night and day and last[s] 2-3
weeks at a time with meds."  *Id.*  Plaintiff reported he sits on
the couch or lays down when his gout is active, and gout pain
prevents him from sleeping.  Tr. 229-30.  Plaintiff stated he
sometimes feeds the dog.  He needs help with putting on his shoes
and socks and with remembering to take his medications.  Although
he loves to cook, he cannot cook any more and instead prepares
sandwiches about twice a week.  Tr. 230.

Plaintiff reported he puts dishes away for ten or 20
minutes, but he requires encouragement because of his pain.
Tr. 231.  He does not have a driver's license.  He grocery shops
about once a month for about one hour.  He no longer fishes or
hunts, does not have regular social activities, and does not go
out.

Plaintiff estimated he can walk about ten minutes before
needing to stop and rest for about ten minutes.  Tr. 233.  He
stated he did not have any trouble paying attention for as long
as required, but he does not finish what he starts.  He has been
laid off from work because of his difficulty in getting along
with other people.  He does not handle stress or changes in
routine well.  Tr. 234.

At the May 2013 hearing Plaintiff testified he does not have
a driver's license, yet he occasionally drives his ten-year-old

stepson to school if he misses the bus.  Tr. 45.  Plaintiff went
to school through the tenth grade, and some of his classes were
special education.  Plaintiff built fences in the summer of 2006.
Tr. 46.  He worked as a cook at Wendy's for about six months in
2008.

Plaintiff said he could not work alone at a simple job for
eight hours a day five days a week because he would have "a hard
time paying attention."  Tr. 50.  He smokes marijuana three or
four times a day for pain medication, and he takes Percocet.
Plaintiff stated he does not think smoking marijuana impairs his
ability to pay attention.  Tr. 51.  He helps his stepson with
homework.

Plaintiff testified he "hurt all the time."  *Id.*  He saw his
doctor in October 2012, but he discontinued his medications
against medical advice.  Tr. 52.  He stopped one medication
because it was not controlling his gout and he required help in
the bathroom.  Tr. 52.  He tried a new medication that was not
effective, but he ran out of that medication before the hearing.
He has not been to the emergency room because of gout.  Tr. 53.
He is on the Oregon Health Plan and cannot afford to see a
psychologist or psychiatrist.

Plaintiff did not complete his program at St. Vincent de
Paul because he could not afford the gas to go back and forth.
Tr. 54.  He also stated he did not receive any telephone calls

from his counselor.  He stopped counseling with Hugh McCauley, M.S.W., because he could not afford to continue.  Tr. 55.  The ALJ asked Plaintiff to respond to comments from St. Vincent de Paul to the effect that Plaintiff's lack of motivation was the main barrier to his employment.  Plaintiff responded:  "I have no clue."  Tr. 55.

Plaintiff gets free marijuana from friends who grow medical marijuana.  Tr. 56.  He visits friends and helps with dinner, the dishes, and taking out the trash.  He feeds his dog, watches NASCAR, and plays video games.  Tr. 57.  He can walk about a block and stand 15 to 20 minutes before his feet start to hurt and he has to sit down.  He stated he gets up about three or four times an hour when sitting.  Tr. 58.  He can pick up a 20-pound object two or three times, but "then I'd just be pushing my body to the limit because I pay for it afterwards.  It doesn't immediately swell up that same day, but during the night when I'm resting is when it starts really attacking my body and by the time I wake up, . . . I'm in so much pain that it's unbearable." *Id.*  He can kneel and walk up and down one flight of stairs. Tr. 59.  He can only reach above his head for a short period of time before his hands become numb.  He has reported this numbness to his doctors.

Plaintiff last fished or hunted about four years before the hearing.  Tr. 60.  He would fish and hunt now if he had licenses.

13 - OPINION AND ORDER

Tr. 61.  He plays video games for about 20 minutes at a time.
He stated he lost his job at Wendy's after swearing at his
supervisor, and he lost a construction job after throwing a
sledge hammer at his supervisor.  His father beat him when he was
young.  Tr. 66, 70.

Plaintiff testified he was unable to return to see
Counselor McCauley because he could not afford the counseling,
and he did not attempt to get help for his anger issues with
another provider because he did not know or trust anyone else.
Tr. 71.

Plaintiff stated he was "always slow. . . .  It's just so
hard for me to get motivated in the jobs because some jobs I just
don't do.  I just don't have no clue what they want me to do."
Tr. 72.  Plaintiff said he could not do a simple job if he was
not around people because "I would lose interest in it."  *Id.*
Plaintiff clarified that he "has a problem keeping focused on
stuff" and could focus on a two-hour long NASCAR race for only
about 30 minutes.  Tr. 73.  He has never had a job where he did
not have a conflict with a supervisor.  Plaintiff has a hearing
aid and reads lips.  Tr. 74.

### B.   The ALJ's Finding that Plaintiff's Testimony Was Not Fully Credible

#### 1.   Inconsistency of Plaintiff's Statements

The ALJ found Plaintiff's testimony was less than fully
credible because Plaintiff "asserts that he was fired from a fast

14 - OPINION AND ORDER

food restaurant in 2008 after hurting his hand; he stated to another source, however, that he had excessive absences and was fired." Tr. 24. The ALJ does not cite the source or to whom Plaintiff reported he was fired for excessive absences nor does the ALJ identify any evidence in the record to support such a finding.

In April 2011 Plaintiff completed a Work Activity Report in which he stated he left a grill-cook position in June 2008. Plaintiff stated in the report: "I hurt my hand on the job and went to the doctor. The next day the manager told me since I hurt my hand that my hours was going to be cut. I told him that I needed the hours and was terminated instead." Tr. 199.

In April 2011 Plaintiff also completed a Disability Report in which he reported: "I was terminated because my hours was going to be cut because I hurt my hand on the job. The manager stated that my hours was going to be cut due to my injury. Told the manager that I needed the hours and he said then your terminated." Tr. 214.

The Commissioner cites the March 2013 report of Ryan Scott, Ph.D., to whom Plaintiff reported that he left a job in 2009 "after his wife kicked him out of the house and he was homeless and apparently this interfered with his ability to attend work regularly." Tr. 460.

15 – OPINION AND ORDER

At his May 2013 hearing Plaintiff testified:

> Q Can you describe any problems that you
> had with bosses in any jobs and when and
> what happened?
>
> A It always turned into an argument and a
> fight.
>
> Q Can you give any examples of specific
> jobs, particularly in the last 15, 18 years?
>
>
> A The last one at Wendy's, I was supposed to
> show up at 6:00 in the morning to put things
> up and get everything turned on or ready
> to go that morning.  I got there.  The people
> that was opening up with me, the assistant
> manager told me I wasn't supposed to touch
> stuff until the manager got there.  He didn't
> get there until 10:00 that morning.  Okay.
> That meant they had to call somebody else in
> to do my job that I was already there for.
> So when he shows up at 10:00, I asked him what
> was going on and he said that I was fired.  So
> I had a few choice words with him.
>
> Q After you were fired?
>
> A Before I got fired because-
>
> Q What were those words?
>
> A I shouldn't say them in front of women.
>
> Q Did you swear at your supervisor?
>
> A Yes, sir, I did.

Tr. 65-66.

Plaintiff contends these reports are not mutually
exclusive and that it is unlikely that an employer would fire him
for having an injury unless there were other issues such as
attendance problems.  On this record Plaintiff's statements are

16 - OPINION AND ORDER

plausible; *i.e.,* Plaintiff's injury, his homeless status, his absenteeism, and his swearing at his boss may have contributed to losing his job.  Thus, the Court agrees Plaintiff's statements are not mutually exclusive and, therefore, are not inconsistent.

The Court concludes on this record that Plaintiff's statements made over a period of two years about events that occurred seven years ago are not inconsistent to a degree that would support a finding that Plaintiff's testimony was less than credible and, therefore, do not constitute a clear and convincing reason for the ALJ's finding to that effect.

    2.  <u>Cannabis Abuse and Driving Without a License</u>

The ALJ found Plaintiff's testimony was less than fully credible on the ground that Plaintiff "acknowledges daily repeated use of marijuana, does not have a medical marijuana card, and says he gets the drug from a friend for free" and Plaintiff does not have a driver's license and yet he drives his stepson to and from school when the child misses the bus. Tr. 24.  Although Plaintiff's conduct may constitute more than poor judgment, the Court concludes these are not clear and convincing reasons to find Plaintiff's testimony as to his physical and mental limitations was less than fully credible.

    3.  <u>Compliance with Treatment</u>

The ALJ found Plaintiff's subjective complaints were not fully credible because "[t]he medical evidence of record

17 - OPINION AND ORDER

shows that [Plaintiff] is rarely compliant with treatment."
Tr. 27. An ALJ may permissibly infer that a claimant's pain is
not as disabling as the claimant reported when the claimant did
not seek treatment. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039
(9th Cir. 2008). An ALJ, however, should not discredit a
claimant for not obtaining treatment he cannot afford. *Orn v.
Astrue,* 495 F.3d 625, 638 (9th Cir. 2007).

The ALJ specifically rejected Plaintiff's complaints
about pain from gout as not entirely credible because even though
Plaintiff complained of gout in his left foot, left elbow, and
right finger, "[m]ost of the claimant's symptoms and history are
self-reported, as he had not seen a doctor in over 20 years when
he appeared at a medical clinic in early 2010." Tr. 25.
Plaintiff, however, argues he was unable to afford treatment at
the time and did not have access to free or low-cost medical
services. Although the Commissioner points out that Plaintiff
failed to apply for the Oregon Health Plan as recommended by
Counselor McCauley in November 2007 and Plaintiff testified in
May 2013 that he had not been able to afford a psychiatrist or
psychologist, Plaintiff had insurance in April 2011 and was on
the Oregon Health Plan and receiving treatment for gout by the
time of the May 2013 hearing. Tr. 362, 407-09.

In March 2010 Certified Physician's Assistant (PA)
Kristi Skoog noted redness and swelling in both of Plaintiff's

18 - OPINION AND ORDER

feet, diagnosed "acute arthritis, suspect gout," and prescribed
Indocin.  Tr. 368.  In February 2011 Neema Reddy, M.D., diagnosed
Plaintiff with gout in his right foot and left ring finger.
Tr. 363.  In September 2011 PA Skoog found redness and warmth in
Plaintiff's left foot and pain with movement of his elbow.
Tr. 361.  Plaintiff reported anti-inflammatories made him ill,
and PA Skoog prescribed Prednisone and Percocet.  In January 2012
Certified Physician's Assistant (PA) Christy Hakala noted extreme
erythema and swelling in Plaintiff's left hand with decreased
range of motion, diagnosed Plaintiff with acute arthralgias, and
referred Plaintiff to rheumatology.  Tr. 448.  By June 2012
William A. Hinz, M.D., noted mild erythema and pain to palpation
in Plaintiff's left foot.  Tr. 419.  He diagnosed Plaintiff with
gout despite low serum uric acid levels.  In July Dr. Hinz
observed mild erythema of the right elbow with slight reduction
in range of motion and found Plaintiff had "a persistent
inflammatory arthropathy concerning for gout versus pseudo-gout
versus an inflammatory arthritis."  Tr. 415.  Thus, the medical
record supports Plaintiff's testimony as to his symptoms
attributable to gout or pseudo-gout.

        The ALJ noted Plaintiff stopped taking his gout
medication seven months before the hearing and had not been to
the emergency room for gout treatment.  Tr. 25.  Plaintiff,
however, points to his medical records that indicate anti-

inflammatory medications caused him to experience nausea.
Tr. 361.  Plaintiff also testified other medications prescribed
for gout either increased his pain or were not effective; for
example, he quit taking Mobic because it caused itching.
Tr. 52-53, 431.  In October 2012 Plaintiff also reported to
Dr. Hinz that he had stopped taking allopurinol and colchicine
after sudden pain and swelling.  Tr. 407.  Although the ALJ may
consider an unexplained or an inadequately explained failure to
follow prescribed treatment when determining whether a claimant's
symptom testimony is credible (*see Smolen v. Chater,* 80 F.3d
1273, 1284 (9th Cir. 1996)), the ALJ must consider medication
side effects when assessing compliance with treatment.  SSR 96-
7p, at *8.  Here Plaintiff's reports of side effects from his
medications are a valid reason for him to have ceased taking
those medications.

On this record the Court concludes Plaintiff's failure
to seek earlier treatment for gout does not constitute a clear
and convincing reason to find that Plaintiff's testimony was not
fully credible.

The ALJ also found Plaintiff's testimony was not
credible because, among other things, Plaintiff does not wear
recommended hearing aids even though he has hearing loss.
Tr. 24.  The Commissioner concedes the ALJ erred when he failed
to consider the fact that Plaintiff actually had a hearing aid

and needed another one, but insurance would not cover it.
Tr. 73, 354.  Nevertheless, the Commissioner contends the ALJ's
finding that Plaintiff was not wearing the hearing aids that were
recommended was harmless error because the ALJ articulated other
reasons that were sufficient to support her finding that
Plaintiff's testimony was not credible such as inconsistency in
Plaintiff's statements, Plaintiff's cannabis abuse, driving
without a license, and failure to seek treatment.  As noted,
however, the Court has concluded the ALJ's "other reasons" are
not legally sufficient under the circumstances of this case to
support her finding that Plaintiff's testimony was not credible.

        The Court concludes under the circumstances reflected
in this record that Plaintiff's failure to follow prescribed
treatment is not a legally sufficient reason to support the ALJ's
finding that Plaintiff's testimony was not credible as to his
limitations.

                4.  Plaintiff's Verbal IQ Score

        Plaintiff contends the ALJ erred by failing to consider
his Verbal IQ score of 75.  Plaintiff cites to the December 2006
evaluation of Plaintiff by Steve Pethick, Ph.D., to support his
contention.  Tr. 385-90.

        Dr. Pethick conducted a clinical interview and
administered the Beck Depression Inventory, the Beck Anxiety
Inventory, the Wechsler Adult Intelligence Scale-Third Edition,

21 - OPINION AND ORDER

and the Woodcock Johnson Psycho-Educational Test of Achievement-Third Edition.  Testing indicated Plaintiff had a Verbal IQ score of 75, a Performance IQ score of 95, and a Full-scale IQ score of 83.  Tr. 387.  Dr. Pethick noted

> [t]he Full Scale IQ is the aggregate of the Verbal and Performance scores and is *usually* considered to be the most representative measure of global intellectual functioning. However, in Mr. Overman's case, there is a highly significant discrepancy between his verbal skills and his nonverbal skills, thus his Full-scale IQ is not a valid indicator of his overall ability.  The 20-point difference between Mr. Overman's Verbal IQ and Performance IQ is highly significant, with differences of this magnitude found in only 7% of the popula-tion.  In cases such as this, it is more important to examine the individual sub-scale scores that comprise each major index score.

*Id.* (emphasis in original).

Dr. Pethick concluded Plaintiff "clearly has a more difficult time with language-based problem solving" and "clearly has a learning disability related to language-based problem solving."  Tr. 387-88.  Dr. Pethick found Plaintiff's ability to solve verbally-based problems and his short-term memory were within the "borderline" range.  He concluded Plaintiff qualified for worksite accommodations that include, among other things, extra time to complete tasks; clear, simple, written instructions for job tasks; the opportunity to ask questions; demonstration of tasks as verbal instruction is given; and eye contact before verbal instruction.  Tr. 388-90.  Dr. Pethick diagnosed Plaintiff

with Major Depressive Disorder, recurrent, severe; Intermittent Explosive Disorder; Generalized Anxiety Disorder; and Learning Disorder NOS with specific limitations in auditory processing and short-term memory.  Tr. 389.

Plaintiff contends Dr. Pethick's assessment supports Plaintiff's testimony that he sometimes "just doesn't have a clue" what an employer wants him to do.  Tr. 72.  The ALJ accepted Dr. Pethick's opinions, stating that "[t]he residual functional capacity assessed in this decision accommodates Dr. Pethick's recommendations."  Tr. 26.  In his evaluation of Plaintiff's RFC, however, the ALJ did not include Dr. Pethick's opinion that Plaintiff required worksite accommodations that include, among other things, extra time to complete tasks; clear, simple, written instructions for job tasks; the opportunity to ask questions; demonstration of tasks as verbal instruction is given; and eye contact before verbal instruction.  Tr. 388-90.

In summary, the Court concludes on this record that the ALJ erred when he failed to provide clear and convincing reasons for finding Plaintiff's testimony was less than fully credible.

## II.  The Medical Evidence

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  If a conflict does not arise between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than

to that of an examining physician. *Lester*, 81 F.3d at 830. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and to observe the patient as an individual. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ shall also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (Treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006)(examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of a nonexamining physician by itself is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n.2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

**A.    Dr. Pethick**

As noted, the ALJ states her RFC assessment of Plaintiff "accommodates Dr. Pethick's recommendations." Tr. 26. The

24 – OPINION AND ORDER

Commissioner reiterates the ALJ adequately addressed
Dr. Pethick's opinion because the ALJ limited Plaintiff to only
occasional contact with supervisors, coworkers, and the public in
a job where excellent hearing is not required, where he is given
instructions verbally and by demonstration, and where he does not
perform production-line work.

As noted, however, the record reflects Dr. Pethick also
found Plaintiff qualified for accommodations in the worksite that
included extra time to complete tasks; clear, simple, written
instructions; the opportunity to ask questions; the ability to
complete only one task at a time or to break larger tasks into
shorter, more manageable tasks; paired visual and spoken
instruction; and establishment of eye contact before verbal
instruction.  Tr. 388-89.  None of these limitations, which are
uncontradicted in the medical record, are addressed in the ALJ's
evaluation of Plaintiff's RFC assessment nor included in the
ALJ's hypothetical to the VE.  Tr. 23-24, 75-83.

In any event, the Commissioner asserts the ALJ need
not include "recommendations" in her RFC findings.  Although
Dr. Pethick's list of worksite accommodations occurs under the
heading of "Recommendations," Dr. Pethick explicitly states
Plaintiff "qualifies for the following accommodations" in an
educational setting and in a workplace setting.  Tr. 389-90.
Moreover, Dr. Pethick's opinions are corroborated by Dr. Scott's

25 - OPINION AND ORDER

opinion as set out below.

Accordingly, on this record the Court concludes the ALJ erred when she failed to consider all of the limitations set out in Dr. Pethick's opinion, to include those limitations in her evaluation of Plaintiff's RFC, and to include those limitations in her hypothetical to the VE without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.   Ryan Scott, Ph.D.**

In March 2013 Dr. Scott completed a Mental Residual Functional Capacity form in which he indicated Plaintiff was at "Category IV" (precludes performance for 15% or more of the 7.5 hour workday) in his ability to accept instructions, to respond appropriately to criticism from supervisors, and to travel in unfamiliar places or use public transportation.  Tr. 469, 471. He indicated Plaintiff was at "Category III" (precludes performance for 10% of the 7.5 hour workday) in several areas: the ability to remember locations and work-like procedures; to understand, to remember, and to carry out short and simple instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or in proximity to

others without being distracted by them; to make simple work-
related decisions; to interact appropriately with the general
public; and to get along with coworkers or peers without
distracting them or exhibiting behavioral extremes. Tr. 469-71.
Dr. Scott concluded within a reasonable degree of medical
certainty that Plaintiff would be unable to perform
independently, appropriately, effectively, and on a sustained
basis for 7.5 hours per day, five days per week in a competitive
work setting. Tr. 472. Moreover, when questioned by Plaintiff's
counsel at the hearing before the ALJ, the VE testified the
limitations identified by Dr. Scott, specifically the inability
to respond appropriately to criticism from supervisors or accept
instruction, would result in the hypothetical claimant's
inability to "keep employment." Tr. 81.

The ALJ noted Dr. Scott's opinion that Plaintiff has
moderate difficulty in carrying out simple instructions, has
moderate difficulty making simple judgments and work decisions,
and has moderate social limitations. Tr. 26. Although the ALJ
gave some weight to Dr. Scott's opinion, the ALJ found the
limitations set out by Dr. Scott were based on Plaintiff's
subjective complaints and self-reported anger issues that the ALJ
did not find credible or consistent with Plaintiff's work at
St. Vincent de Paul or with the medical record as a whole even
though Dr. Pethick's opinion corroborated Dr. Scott's opinion.

27 - OPINION AND ORDER

Tr. 27.  The ALJ failed to address specifically Dr. Scott's
Mental Residual Functional Capacity Assessment or the limitations
identified in that Assessment.  When questioned by Plaintiff's
counsel, the VE testified the limitations identified by Dr. Scott
would probably end in termination.  Tr. 80-81, 83.

On this record the Court concludes the ALJ erred when she
gave little weight to Dr. Scott's opinion regarding Plaintiff's
limitations without providing legally sufficient reasons
supported by substantial evidence in the record for doing so.


### REMAND

The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court.  *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).
The issue turns on the utility of further proceedings.  A remand
for an award of benefits is appropriate when no useful purpose
would be served by further administrative proceedings or when the
record has been fully developed and the evidence is insufficient
to support the Commissioner's decision.  *Strauss v. Comm'r,* 635
F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart*,
379 F.3d 587, 593 (9th Cir. 2004)).  The court may not award
benefits punitively and must conduct a "credit-as-true" analysis
to determine whether a claimant is disabled under the Act.  *Id.*
at 1138.

Under the "credit-as-true doctrine evidence should be credited and an immediate award of benefits directed when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*  The reviewing court should decline to credit testimony when "outstanding issues" remain.  *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).  If the reviewing court finds the conditions of the "credit-as-true" rule are satisfied, however, the court may only remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that the claimant is, in fact, disabled."  *Garrison v. Colvin,* 759 F.3d 995, 1021 (9th Cir. 2014).

The Court has concluded the ALJ erred when she rejected the opinions of Drs. Pethick and Scott, examining doctors.  If credited, those opinions establish that Plaintiff is disabled under the credit-as-true doctrine.  Thus, the Court concludes Plaintiff is disabled based on this medical record and that no useful purpose would be served by a remand of this matter for further proceedings.  *See Harman,* 211 F.3d at 117.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the

29 - OPINION AND ORDER

Commissioner and **REMANDS** this matter to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g), for the immediate calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

DATED this 6th day of January, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge